LE BARON, Regional Director, v. KERN COUNTY FARM LABOR UNION et al.

Civil Action No. 733.

United States District Court
S. D. California, N. D.
July 1, 1948.

On Further Consideration July 3, 1948.

Robert N. Denham, Gen. Counsel National Labor Relations Board, and Julius G. Serot, both of Washington, D. C., and James V. Constantine, for petitioner.

James F. Galliano, of Oakland, Cal., for respondent Teamsters Local 87, AFL.

Alexander H. Schullman, of Los Angeles, Cal., for all other respondents.

HALL, District Judge.

Any other matters that the parties wish to urge before proceeding? (No response) There do not appear to be any.

The matter was concluded at 4:00 o'clock, when I indicated I would make a ruling at this time, on the motion to dismiss filed by the respective respondents to the petition filed in this case. Obviously I have not had time to write any extended conclusions, but I hope that I will be able to cover the points that have been raised.

The first thing to decide, it seems to me in the consideration of this matter is what the hearing is and what it is not. This is not a hearing on the merits of the labor dispute and it is not a hearing on the merits of any alleged unfair labor practices. It is a hearing on a motion to dismiss a petition which requires the decision of this court as to whether or not the regional director had reasonable grounds to believe that the acts charged constituted an unfair labor practice under special provisions of the particular act of Congress conferring jurisdiction on this court for such purposes only.

This jurisdiction is limited, as I read the law, to a preservation of the status quo pending the time that the Labor Board, under the powers conferred upon it exclusively by the Act, 29 U.S.C.A. §§ 141 et seq., 151 et seq., can hear and determine the merits as to whether or not the alleged practices do or do not constitute unfair labor practices.

154

■ It must be kept in mind that the review of any ruling by the Labor Board on such a matter does not lie in this court. This court is not granted jurisdiction to hear and determine that, but the Circuit Court of Appeals is granted that jurisdiction, and that jurisdiction exclusively.

It is urged by counsel for the respondents that the general equity powers of this court are not abrogated, and with that I agree. But under the general equity powers, if the District Court of the United States has jurisdiction of the subject-matter and of the parties, it may use its equity powers to preserve the status quo even though it may ultimately decide that it had no jurisdiction orginally of the cause. And whatever jurisdiction of the parties is not conferred by the general statutes (they all appear to be residents of this district) is conferred by the Act in question. And the jurisdiction of the subject-matter is specifically conferred by the Act in question, and thus this court has jurisdic- ton of the parties and of the subject matter.

Coming to the points that were urged by the respondents, and taking up the constitutional questions first. It seems to me that they have been pretty well covered by Judge McCormick of this District when he heard and decided the case of Lebaron v. Printing Specialties and Paper Converters Union, Local 338, and which is reported in 75 F.Supp. 678.

■ But even so, in giving consideration to the urgings of respondents' counsel that in this case there is no incident of the application of the commerce clause to the acts charged, and having recourse to the petition here, which must be used as a guide in connection with the motion to dismiss, it seems to me that the allegations are sufficient under the petition to cover whatever objection there might have been made to a lack of the power of Congress under this Act to regulate commerce among the states by a prohibition and regulation of the acts which they set forth therein. I think I adverted this afternoon to some of the allegations in the petition and the fact that there are several and various unions that are charged therein with attempting to prevent the flow of any commerce in the particular commodities.

It is urged also that the Act itself is in violation of Art. I of the constitutional amendments and of the Fourteenth Amendment of the Constitution. As I indicated before, I think that Judge McCormick disposed of both of those contentions appropriately.

However, in view of the earnestness of the respondents in connection with their advocacy of the proposition that the Act interferes with the right of free speech, and that under the petition there is no charge of violence or threats of violence, it might be well if I should make an observation of my own views in that connection.

■ I cannot see the Act as being contrary to the First Amendment of the Constitution of the United States. Counsel in his argument suggested that the Act itself recognizes and preserves the right of free speech. I think that the Act attempted to give recognition, and did give recognition, to what I regard as probably the fundamental concepts which underlie the First Amendment of the Constitution of the United States, concerning freedom of speech, and press, and religion, and petition, and assembly. And in that connection it has seemed to me that that concept might be expressed about as follows. I will take this occasion to state it because from the ruling which I shall shortly announce counsel will probably be concerned with it throughout the rest of the proceedings.

■ Speech, press, religion, petition and assembly—the rights that are protected by the First Amendment—are actually instrumentalities of the human mind and spirit which are guaranteed by the Constitution in order that they may be used by the human mind and spirit to appeal to the intellect and spirit of other human beings. Such freedoms include the use, of the mechanical and manual extensions of those instruments, there is no doubt, such as the press, pamphlets, placards, radio and other means of communication of the same or similar nature. But such freedoms, in my judgment of the concept which underlies the First Amendment, do not include

the use of any force, whether direct force, such as physical bodily harm, or tacit or indirect force, such as threats, either of immediate bodily harm or the more subtle but more effective and permanent harm to human beings that will come through hunger, loss of jobs, or the effective loss of a right to hold a job, or starvation to any other human being or those dependent upon him. And it seems to me that by fundamentalizing these freedoms, the use of force, either direct or indirect, or tacit or implied, is actually condemned by the First Amendment of the Constitution of the United States, as is also condemned the use of those freedoms to destroy these same freedoms to other people. These freedoms, it seems to me, include the right of any individual to be free from such speech, or products of the press, or religion, or petitions, or assemblies as he, in the exercise of his own intellect and spirit, may choose.

For these reasons I cannot see in the Act an actual infringement upon them, or any effort to infringe upon them, but rather an effort to preserve them to all alike. Nor do I see any violation of the Fourteenth Amendment in connection with the rights of individuals or as citizens of the state of California.

It is contended that the Act itself exempts a defendant union, which is described as the Kern County Farm Labor Union, because the Act by its terms in Section 2 does not include any individual employed as an agricultural laborer. But again having recourse to the rule of law, with which all of you counsel are familiar, that we must look to the petition itself, it seems to me that that is cured by the allegation that this union is subject to the Act and is a labor organization within the meaning of the Act.

While it is urged that that is a matter of conclusion, as suggested by counsel during argument, it seems to me that the government, or the petitioner here, should not be put to the burden of alleging everything that a respondent is not. Nobody has to do that in any kind of a lawsuit. You allege what the respondent is or what the respondent does, but you do not allege what the respondent is not or what he does not do. If you had to do that you would probably run into encyclopedic proportions in any kind of a. law pleading.

I think therefore that the suggestion and contention that the union which I have just described is exempt from the Act must be rejected by virtue of the allegations in the complaint.

While counsel for the petitioner suggested that the farm labor union took in many other classes of workers than agricultural workers, I have no such allegation before me and I do not know that it is a matter of such common knowledge that I can take judicial notice of it.

The next point urged was that this being an equitable proceeding, it appeared from the face of the complaint that plaintiffs were not entitled to relief because they came in with unclean hands, for the reason that the prerequisites of procedure had not been complied with by the plaintiff. Counsel referred to the Rules and Regulations, Series 5, and Statements of Procedure, which appear to be promulgated by the National Labor Relations Board, and I assume are published in the Federal Register, and are in compliance with the federal Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

But having recourse to the Act, which as I have indicated before is an Act which confers limited and narrow jurisdiction upon this court, I do not find anything in the Act concerning any prerequisite procedure; such as you will find in the Naturalization Act, 8 U.S.C.A. § 701 et seq., for instance, those of you who are familiar with it, and with the naturalization laws which require that before you can commence certain proceedings in the District Court there must be a prerequisite preliminary procedure taken under the terms of the statute itself, or the court has no jurisdiction. 8 U.S.C.A. § 903.

Moreover, and it was so urged, in that respect a presumption of regularity attaches to the acts of all officers of the Government of the United States, and the presumption is, and it need not be alleged because it is a presumption, that whatever was required to be done by the Regional

156

Director in this instance, insofar as procedure is concerned, was done.

 Moreover, the petition shows that the complaint filed before the Regional Director is still pending, that it has not been decided, that the Regional Director has reasonable cause to believe that the acts are unfair labor practices, and those things, as I read the section—I think it is Section 10(*l*) of the Act—which is the section conferring jurisdiction upon this court, are all that is required by way of any preliminary, prerequisite procedure.

 Coming now to the contention that the petition here lacks particularity, it seems to me that the particularilty is supplied by reading the whole complaint. As all of you lawyers know, it is very easy to take one phrase, or sentence, or statement from almost any document or pleading and attempt to show it does not cover anything. But we are also all familiar with the fact that you must take every document by its four corners, and that applies as well to a pleading such as this, and read it in its entirety. So that by reading it in its entirety, and putting myself in the shoes, which Mr. Galliano suggested, of a person —of a lawyer advising his client how to act, it seems to me that there are sufficient, allegations made in there so that they can be answered. And, of course, the proof of the pudding is in the eating, and they did answer.

Moreover, I would like to say that, this being a proceeding under a special Act, which, as I have suggested before and must repeat, is an Act which confers limited jurisdiction and by specific terms, the same particularity would not be required in this kind of a pleading which might be required if, for instance, this were a fraud action, where sufficient facts would have to be alleged and details so that any court upon reading the complaint could reach the same conclusion that the pleader reached, namely, that it was fraud.

For all of these reasons it is my conclusion that the motion to dismiss of all the respondents should be and is denied, and the demand for further particulars is likewise denied.

You will call your witnesses.

## On Further Consideration.

The views I am about to express are certainly not those which might have been formalized if I had taken time to write a long opinion, and I do not think that it is called for under these circumstances or in this case. It is a matter which, by the terms of the Act and in view of the public interest involved, is one which should be decided as quickly as possible, and because I have come to a conclusion concerning the law and the facts in the case I will try to announce my views in outline.

First of all, the evidence that has been adduced in the case has not changed the views which I expressed concerning the law matters which were decided on motion to dismiss, and particularly the constitutional matters.

Secondly, the question arises as to whether or not the respondents are labor organizations within the meaning of the Act. After hearing the evidence and testimony in the case last night, and reviewing the Act again, I leaned to the proposition this morning at the commencement of the argument that the respondent Kern County Farm Labor Union, Local 218, was exempt from the provisions of the Act. But after giving consideration to the arguments of counsel and again reading the applicable sections and portions of the Act I have come to a different conclusion in that respect.

Before announcing it I think I should say that under the evidence I do not think there is any doubt but what all of the other respondents, namely, Local 87 of the Teamsters, Local 848 of the Teamsters and Local 45 of the Distillery Workers are labor organizations within the meaning and terms of the Act and are not exempt therefrom.

The government has urged several propositions:

That the jurisdiction of the court was limited to a determination as to whether or not the regional director had reasonable cause to believe that the respondent Kern County Farm Labor Union, Local 218, was a labor organization within the meaning and terms of the Act.

■ In reading the Act I do not reach that same conclusion as urged by the government. Section 10(l) says: "* * * If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue * * *" The "reasonable cause to believe" which is comprehended within that language is whether or not the charge is true and that a complaint should issue.

The government next took the position that the Kern County Farm Labor Union, Local 218, was actually, under the evidence in the case and in truth and in fact, a labor organization within the comprehension and meaning of the various terms of the Act involved and not exempt. I do not reach a conclusion on that subject from the evidence in the case because I do not think it is necessary.

Section 8(a) says that it shall be an unfair labor practice for a labor organization of its *agents* to do the things which are prescribed therein and certain of which are charged in this case, and certainly only a very limited and very narrow charge is made against the respondents in this case.

I think under the evidence in the case Local 218 is not an independent, autonomous body. By the testimony of Mr. Hasiwar, the only laws, rules or regulations, that is, union laws, rules and regulations which are applicable are the laws, rules, regulations, constitution, and so forth, of the International Union, which takes into its membership not only those persons who are exempted under the terms of the Act, that is to say, an individual employed as an agricultural laborer, which Mr. Hasiwar described as a man who works manually with his hands in the field, but takes into its organization related types of labor, shedmen, warehousemen, sorters, and men and employees and persons ing things other than what is described or comprehended by the Act to be purely agricultural labor.

And the testimony further shows that Mr. Hasiwar is an officer of the National union and that since the commencement of the strike he has been in charge of and conducting the affairs of Local 218.

■ For that reason I do reach the conclusion that Local 218 is an agent of a labor organization, to wit, the National Farm Labor Union, and while the National Farm Labor Union is not made a party, it is not necessary that a principal be made a party to an action if relief, such as an injunction, is sought only against the agent, and that is all that is sought here.

For that reason it appears to me that all of the respondents are subject to be enjoined if an injunction should be issued and that the court has jurisdiction of them under the terms and provisions of the Act.

■ The next question is whether or not the regional director, in compliance with the terms of Section 10(l) of the Act, conducted a preliminary investigation upon which he might reach a conclusion as to whether or not he had reasonable cause to believe that the acts charged in the exhibits which are attached to the complaint and set forth in the petition are unfair labor practices. I think that a preliminary investigation is a prerequisite to the reaching of such a conclusion so as to enable the regional director to come to a District Court of the United States under Section 10(l) and seek an injunction, not only under the terms of the Act but under the rules and regulations of the Board itself, and specifically Section 202.7, which reads: "Before any complaint is issued"—and I do not understand that a complaint has been issued by the Board in this case, only charges made before it—"or other formal action taken, the regional director affords an opportunity to all parties * * *"

■ Now the formal action in this case was the filing of the complaint in this court on June 17th, and the question is whether or not the regional director conducted an investigation, not a thorough investigation such as would enable him to reach a final conclusion as to whether the respondents are or are not labor organizations, whether the practices are or are not on their merits unfair labor practices but the Act says a "preliminary investigation." I am satisfied from the evidence in the case that a preliminary investigation was conducted by the regional director so as to satisfy that jurisdictional requirement of the statute.

No officer of the Board or agent testified concerning the extent of the investigation, but from the various witnesses who were produced it was apparent that they had been interviewed and that at least a preliminary investigation was made so as to enable the regional director to reach a conclusion as to whether or not he had reasonable cause to believe that the acts charged were unfair labor practices.

The question now comes to the fourth segment of this problem, and that is whether or not under the evidence in the case the regional director did have reasonable cause to believe that the acts charged were unfair labor practices.

 There were quite a few witnesses called who testified, and due to the limitations at least upon my own intelligence I do not have the ability to recall, extemporaneously or analyze or sum up the testimony of each witness in relation to his own testimony and with relation to all of the others, but in reaching every judgment there are certain imponderables which cannot be set forth or described or, as one judge expressed it, he can never tell which straw broke the camel's back in his reasoning, but taking into consideration all of the evidence. all the witnesses who testified, their manner of testifying on the witness stand, their appearance, what they had to gain or lose, the rules which we prescribe to jurors and which are just as binding upon judges for determining and weighing testimony, and believing the testimony which I believe was true and rejecting that which I believed to be untrue, I can only come to the conclusion that the regional director did have reasonable cause to believe that the acts charged are unfair labor practices.

 I want to again emphasize the fact that in my views the power conferred upon the court in such a case as this is a very narrow power, and that whatever I have said in connection with this matter, or my conclusions now, or anything that I have said during the course of the hearing, is not to be taken as an indication as to whether the strike is just or unjust, or either of the strikes, or whether any of the acts or conduct of any of the persons or unions or organizations involved, whether labor organizations or otherwise, are or are not unfair labor practices. Those matters, in my judgment, are committed to the exclusive jurisdiction of the National Labor Relations Board under the Act of Congress, and Congress has the constitutional power to so commit it, as I have heretofore indicated in connection with the constitutional questions raised in this case, and has been so held in other cases particularly by Judge McCormick in this District in the Printing Trade Specialty cases. Lebaron v. Printing Specialties and Paper Converters Union, Local 388 (A. F. L.) 75 F.Supp. 678.

I think that that covers the views which I care to express. I believe that outlines my views on all the points that have been raised and discussed by counsel so that they may at least have some reasonable indication of why I reached the conclusions expressed.

The plaintiff will prepare the appropriate findings and decree.